WILL OF POOLE: POOLE, Executor, Appellant, vs. POOLE
and others, Respondents.

*September 11—October 8, 1940.*

For the appellant there was a brief by *O. D. Black* of Richland Center, attorney, and *Hall, Baker & Hall* of Madison of counsel, and oral argument by *Laurence W. Hall.*

*Lorin L. Kay* of Richland Center, for the respondents.

ROSENBERRY, C. J. The following facts appear without dispute: James Poole died February 3, 1939; his wife, Martha Poole died on February 1, 1939. He left all of his property to two grandnieces and a grandnephew. At the time of his death the deceased owned three farms appraised at $14,150, personal property of the value of $6,745.47, left no debts except for expenses of his last illness and funeral expenses. There is some evidence in the case that the deceased had criticized a monument as looking "kind of cheap," and that he intended to get a good one, and that he had $3,000 laid aside to bury himself and his wife. There was considerable dispute in the evidence, however, as to

the average cost of monuments, the executor producing testimony that it was from $800 to $1,500 and the objectors about $325.

It is considered that the issue presented here is primarily one of law. Sec. 318.01 (4), Stats. 1939, provides:

*"Allowance for tombstone.* In case no provision is made in the will for a tombstone or monument or marker at the grave of the decedent, and none has been erected, the executor or administrator may expend a reasonable sum for a tombstone or monument or marker at the grave of his decedent. The expenditure shall be subject to the approval of the court and shall be classed as funeral expenses."

The will of the testator provided:

"It is my will that all of my just debts, funeral expenses and expenses of administration of my estate be paid as soon as practical after my decease."

No specific provision having been made in the will for a tombstone, the authority of the executor is referable to sec. 318.01 (4), Stats. No doubt the provision that the expenditure for a tombstone shall be subject to the approval of the court is intended as a check upon the acts of an executor and to make him conform to what under the circumstances in the opinion of the court seem to be just and reasonable. The statute vests in the court a discretion which is to be exercised in the light of all the circumstances. *Will of Robinson* (1935), 218 Wis. 596, 261 N. W. 725.

While the executor had some informal conversation with the county judge (who later called in the county judge who tried the case), he procured no authority for the purchase of the monument in question from the court. The fact that he consulted the county judge would indicate some doubt in his own mind as to the propriety of his action. Under such circumstances an ordinarily prudent person would have sought the advice and approval of the court before contracting for the purchase and erection of the monument. The executor chose to act without securing the advice of the

court. He could not by his action conclude the court and so acted at his own risk. It is considered that it is a matter for the county court and that its determination cannot be disturbed unless upon all the facts in the case this court can say that the trial court abused the discretion conferred upon it by the statute. We find no basis in the record for such a ruling. It may well be that if the trial court had allowed the full amount of the bill its determination could not have been reversed. The whole subject matter of the controversy was one peculiarly within the knowledge of the court and related to matters in which the court had had a large experience. Even if this court sitting as a reviewing court was of the view that the allowance should be greater, that does not warrant a holding that the allowance made was unreasonable or that the trial court abused its discretion.

*By the Court.*—The order appealed from is affirmed.